Mr. Harmon, we see that you've been appointed by the court to represent Actually, I have not in this case. This is not a CJA case. It is identified here as one. They did appoint me, but I had been privately retained before the appointment, so I'm submitting CJA. But I do a lot of CJA work. Well, we appreciate your appearance regardless. You may proceed. Good morning, Your Honors. My name is Bob Harmon and I represent Melvin Harmon in his appeal where he challenges an eight-point enhancement to his sentencing guidelines based on the court's determination of the loss that was involved in this case, and the reason that he's challenging this is because the loss calculations are speculative. Now, we don't have to guess that they are speculative because the proponent of the evidence, which was Agent Burley, admitted expressly that the causal connection between the 155 vehicles and Mr. Harmon's activity was speculative. It's beyond question that speculative evidence cannot be used. It's unconstitutional to use due process violation to use speculative evidence to support a sentencing fact. And even though the standard of proof on sentencing is a preponderance of the evidence, speculative evidence does not rise to the level of admissible evidence or evidence that would satisfy the preponderance of the evidence standard. Do you think that the government would have had an interview and bring in evidence on all 155? It seems to me they relied on markers, sort of like things that were common between the various transactions, and I'm just trying to figure out what would have passed that threshold in your view. Well, so I read the cases that the government submitted, and yes, you can make statistical judgments. When you have a large amount of data, you can make statistical judgments. But as long as you've got your causal connections, all of the cases that the government cites, there's no question about the causal connections. For instance, the president of the bank is the only one who's got access to the funds. Well, there's a causal connection there. You don't have to examine each individual transaction. But let's look at what exactly happened here. So to make a long story short, they narrowed it down, the government narrows it down, Agent 155 vehicles that are questionable. So he decides to take a sampling. He takes a 10% sampling. He samples 15 vehicles of the 155. And of the 15 vehicles, four of them are not appropriate, don't prove there's no causal connection. He's got a 25% error rate on his sample. And what happens to the rest of the 155 minus the four? He applies 100% of them to the damage calculation here. So the sampling, there's no statistical sampling. There's no method. There's no scientific analysis. There's nothing that's acceptable from an accounting point of view. It's just speculation. And when I asked him, since I didn't do the trial, I just came in at the sentencing point. But when I asked Agent Burley, I just want to confirm, this is on page, what is the page here, page 55 of the sentencing transcript, Agent Burley, I just want to confirm you testified at trial and confirmed on cross-exam that you don't know if Mr. Harmon registered any of these other vehicles fraudulently or knowledgeably because you didn't interview 155 people. That's what you said at trial. That's still your testimony. That's correct, he says. So it's just speculative assumption that he had something to do with the rest of these. I didn't interview these other people. So it's just speculation or your assumption that he had something to do with the rest of the vehicles of the people you didn't interview. They all had his, there's a stamp that he had, right? And I'm glad you pointed that out, Your Honor, because the government acknowledges in their stamp these 155, they just say, well, his stamp appeared on it. There's a slip between he stamped it or his stamp appeared. Help me understand the stamp. I understood that somehow only he could get into either his computer or somehow access to use that stamp. So in other words, it's not just a stamp that you pick up off a desk and anyone could use it, that he has to actually get personalized access to it. Is that correct? I believe, and I wasn't at the trial, and I've read the transcript, but I believe that there was some testimony that other people could access his account on the computer. And so that hasn't been denied by the government and that hasn't been proven, it didn't happen. So the real, the end question here is who knows the evidence better than Agent Burleigh? I don't know the, none of us know the evidence better than Agent Burleigh. He's the proponent. He developed it. And his final conclusion at trial is that it's just speculative. So how do we go forward with speculative evidence to assess a, to increase his criminal history, not his criminal history, but his points, by eight points, which adds. Does it go beyond speculative when you add some of the other features, though? If we add, if we just, not just his stamp or mark alone, but there were certain, where the addresses came from and the cost or the price that was paid for the car versus what, actually what they said they paid for the car versus what it was actually worth. Can you put all those things together and get beyond speculative? No, Judge, because Agent Burleigh testified that this is a common crime. A lot of people are doing it. A lot of people from Missouri are registering, are improperly registering their vehicles in Illinois and a lot more than just Mr. Harmon is doing it. So you can't limit it by just that factor alone. And the fact is Agent Burleigh knows best here. How can you or I or the government say in response to Agent Burleigh, a conclusion that my conclusions are just speculative, how can we now say, oh, no, they aren't? He knows better. And so with that, I would like to, I'm sorry, Judge. Go ahead. Well, I was going to say, I'm running short on time here. I want to reserve the, there's one other issue that involves whether the trial court made an independent finding and had a finding in his sentencing that there was a perjury committed and there was not such a finding made by the judge, a specific independent finding. I'll leave that to the briefs. There's no need to argue that today. Well, I wanted to ask a question about that. You argue about the perjury. You do not argue about the, not intimidation of witnesses, but obstructing justice based on improper interaction with witnesses. And so since you don't challenge that, is that an independent reason to uphold that finding? Judge, I think the objection is broader than that because the case law all says that the trial court, if they're going to enhance for either obstruction of justice or for lying to the court, perjury, they have to make an independent statement of what they're basing that on. I would like to say that the argument about the improper assessment applies not only to the amount of time that he has been forced to serve, but it also applies to the restitution amount, which makes over $100,000 difference in restitution. It may, unfortunately, due to the wheels of justice grinding, it may be that even if I'm successful, that we don't release him until after his time would have run anyway. But if you reverse, what I'm asking you to do is remand for resentencing and if the state points are taken off, I think he would be entitled to a sentence that he would have already been time served. I'd like to reserve my last minute. There's no further questions. Ms. Berry. Thank you, Your Honor. Your Honor, relying on the precedent of this honorable court and the record before the trial court, the United States requests that this court affirm the findings of the district court that the actual loss in this case was in excess of $119,000, therefore the restitution being in excess of $119,000, and that the defendant obstructed justice. I'd like to jump straight into some of the questions that, Judge Kelly, that you had. One of the great advantages that I have in this case over my counsel, over defense counsel, is that I was involved in this case during the trial. And the testimony at trial set forth that this investigation began before Agent Burley became involved. It began with the Secretary of State of Illinois' Inspector General. At that point, they had received information that Mr. Harmon, who was an employee of the Secretary of State, may have been involved in fraudulent registration transactions. They had approximately 14 transactions that were questionable. They then came to St. Louis and went and tried to interview all 14 of those individuals. During the interviews of those individuals, they obtained markers that were similarities between all 14 of those individuals. Those were the markers of the sales price that was reported to the State of Illinois on the registration material was substantially less than that on the notice of sale. The fact that the Illinois addresses were used for the registrations, but when the titles were to be mailed and when the notices, the registration materials from the dealerships were reviewed, the addresses were those of Missouri residents. So those were some of the markers that they had based on those interviews of those 14 individuals. They then went back to the Secretary of State Division of Motor Vehicles and asked them to pull every single transaction in a four to five month period conducted by Mr. Harmon based upon his RAC ID, which is the computerized number. So when he logs into the system, there is a number that is assigned to Mr. Harmon. Only Mr. Harmon has that. He obtains that through use of his password. What about the, I want to just jump to what opposing counsel said because that bothered me, which is in then connecting it to the 155 others, there was a false positive rate of four among the 15 he surveyed. Can you address that? Because if that's true, that draws us into substantial doubt. That would, but it's incorrect. Okay. And the reason it's incorrect is that what he's referring to are vehicles that were added after the initial calculation of the 200 vehicles. Those, the first 200 vehicles were obtained after the 1100 based on the RAC ID numbers. They then put in the additional criteria, came up with 200 number, 200 additional individuals. Those were solely based on the RAC IDs and his number. There were additional vehicles that were obtained through the investigation. Had nothing to do with that initial four to five month audit. One was a vehicle that Lucretia Prather, his Mr. Harmon's girlfriend and co-conspirator registered. One was registered, that was a Chevrolet Equinox, was registered using Mr. Harmon's RAC ID number. The second one, which was a Camaro, was not registered with his RAC ID number. But Ms. Prather testified that it was Mr. Harmon who obtained that fraudulent registration for her. Corey Colton was another one. He had a Jaguar that was registered not using Mr. Harmon's RAC ID number and stamp. Mr. Harmon, Mr. Colton, when he pled guilty, allocated to the court that all of his vehicles were obtained through Mr. Harmon, that fraudulent registration. So, the assumption is, is that there was another individual at a different office that he obtained his help through to get those vehicles registered. But Corey Colton and Lucretia Prather both identified Mr. Harmon as the individual who made that possible. There was only one other vehicle and that was Teresa Colton. Teresa Colton's vehicle was registered, the first time it was registered, was using Mr. Harmon's identifiers. She lost her title. About two to three years later, she lost her title, wanted to sell the car. She then took the information that she had already had, the registration that had already been done by Mr. Harmon, went to one of the Secretary of State Motor Vehicle Offices and presented that information and said, I need a new title. At that point, that was the new RAC ID put on it. But there was only one tax loss associated with Teresa Colton's car. And that was the one that was accomplished through Mr. Harmon's number. So once again, that's one of the issues of coming in late in the case, that there's so many different levels and vagaries in this case that may have been missed. But there was no such issue with regard to them. Now, there were duplications. Now, I don't want to ignore the fact that there were duplications in that 200. Those were adjusted by the Probation Office. Probation Office went through the 200 from that audit and reduced that down based upon duplications that they found. The vehicles from Kenita Berenger, which was proven at trial, Teresa Colton, which was proven at trial, Lucretia Prather, which was proven at trial, and Cory Colton, that was proven at trial, were added to that. That's how you ended up with 154 vehicles. Actual loss in this case was the loss from the state of Missouri tax revenue associated to those specific 154 vehicles. Now, Defense Counsel makes a lot of the use of the term speculation. That Agent Burley said it was speculative. Well, put that statement in context. The use of that phrase, which was Defense Counsel's use of that phrase, came out when Mr. Burley was asked whether he had interviewed all 154 of those people. Because he hadn't interviewed all 154 people, that made the determination that Mr. Harmon was related to this speculative. That was not the case. That's not the law. That's not required. This is a preponderance of the evidence. By a preponderance of the evidence, the government proved at sentencing an actual loss of $119,000. The government took a very, very conservative view of what the loss amount in this case was. We could have used the reasonable estimate. After breaking down the numbers earlier this morning, the intended loss is in excess of $453,000 to the state of Missouri, based upon a fraudulent scheme that lasted at least 19 months. It would have included all of those losses. It is the government's position that its estimate of its calculation of loss, that being the actual loss caused by the defendant to the state of Missouri for the one year, not including the other revenue, was appropriate in this case for the restitution as well as loss calculation. Now quickly, turning to the obstruction of justice issue, Judge Strauss, you're entirely correct. The district court did not make the particularized findings. It is the government's position that the record is clear. And so based upon the precedent of this court, the court can find support for Judge Autry's finding. I thought we have a pretty long line of cases that say if you just say overruled, that's not enough. Well, if you look at what... We don't make the determination, well, the judge must have found this, the judge must have thought that, the judge has to tell us what he said. That's correct, Your Honor, but there is also the line of cases, including Reed. And looking at the specific statement that Judge Hamilton made in Reed, that this court affirmed as being sufficient. It's remarkably similar to that made by Judge Autry in this case. However, I don't want to ignore the fact, and as Judge Strauss is correct, there was the witness tampering and as far as the defendant's statement that there is a need for a particularized findings with regard to that aspect of particularized findings to perjury. In this case, the defendant knew that Trayvon Adams was a potential witness in the case because she was material to his biggest defense, that he didn't know Lucretia Prather until much until April of 2016, or at least after the date that in accidents happened. The government submits that the record is clear in this case to support an actual loss of $119,359.92. That then is the appropriate amount of restitution and that even if you only look at the one aspect of obstruction, that is the tampering with Lucretia Prather, with Trayvon Adams, excuse me, that that is sufficient to support the two-level enhancement for obstruction. So we ask the court to affirm the district court's ruling. Does it make a difference that that's not the grounds upon which the pre-sentence report? It is actually. There were two that were on there. It's a false letter and false testimony. I don't want to take up the time. Okay. Well, I and I had to double-check that. There is a Harman submitted fessel to denied trial. Harman further solicited a potential government witness to write a letter to the court on his behalf. As such, the defendant willfully obstructed or impeded. So that's in paragraph 34. I think that's the third sentence in. So they start with the perjury, but they end with the witness tampering that we then proved with regard to the Trayvon Adams testimony. Are there any other questions? Thank you. We appreciate, I appreciate your time. Thank you. Your Honor, as well, my esteemed colleague is correct. I was not at the trial. I was at the sentencing and I refer you to page 42 of the sentencing transcript where the government identifies exhibit 11 as being a chart showing the relevant conduct, the damages for relevant conduct. Exhibit 11 is the chart listing 155 vehicles. And I questioned Agent Burley and he admits that on this chart he investigated 14 or 15 of them personally. And of the 14 or 15, there were three or four vehicles that were false positives directly from his own evidence. And he admits that and then there's another round of questioning here. So I ask him, well excluding these three or four, now the rest of them you don't have any knowledge whether they are fraudulent or not, aside from the eight or 14, minus the three or four that didn't have his mark, the ones you didn't investigate personally, you don't have any idea whether they were fraudulent or not. And all he says is, well, they had a Missouri address on them and we don't know whether it was Harmon's or not. So he's speculating that there's a causal connection that's missing. Which is different, which distinguishes this from every other case cited by the government. You can have statistical analysis. You can have all kinds of analysis as long as you make that analysis known to the defense. And this wasn't a statistical analysis. Which is obvious by the fact that they didn't apply any error rate to the remaining vehicles on the list. These are list vehicles. So for all of these reasons, I would ask the court to remand to the district court for resentencing with instructions that the evidence submitted by Agent Burley and Exhibit 155 is speculative and it doesn't rise to the appropriate evidentiary level. And therefore the eight points was improperly assessed. And if you don't have any further questions, that's all I have. Thank you so much for your time. Thank you to both counsel for your argument and your briefing. And we'll take the matter under consideration. Does that conclude the argument calendar for the day? Court is in recess until further order.